UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TIMOTHY JOHN LARISH,

    Plaintiff,

v.                                                         Case No. 2:05-cv-73
                                                             HON. ROBERT HOLMES BELL

CORRECTIONAL MEDICAL
SERVICES, INC., et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

        Plaintiff prisoner Timothy John Larish filed this civil rights action pursuant to 42 U.S.C. § 1983 against the Michigan Department of Corrections (MDOC), Correctional Medical Services, Inc. (CMS), and CMS Chief Medical Officer Dr. Craig Hutchinson, M.D. Plaintiff alleges that he has been denied necessary medical care while confined at the Chippewa Correctional Facility, in Kincheloe, Michigan. Plaintiff allegedly has chronic hepatitis C (HCV) infection infected with Genotype 3A. Plaintiff alleges that there exists a window of opportunity to treat his condition to prevent irreparable liver damage and likely death. Plaintiff asserts that defendants have refused the necessary treatment solely to save money. Plaintiff explains that treatment costs between $8,000 and $20,000. Plaintiff claims defendants have violated plaintiff's Eighth Amendment rights.

        HCV, according to plaintiff, is one of the leading causes of liver disease in the United States and is a common cause of cirrhosis, liver cancer and liver disease. Plaintiff is uncertain how he contracted the disease. Defendants suggest that it likely came from a blood transfusion during a surgery that plaintiff had some time ago. The disease is monitored by checking for elevated liver

enzymes (ALT and AST) levels, blood tests for presence and amount of HCV RNA, or through a liver biopsy to determine the progression of the disease.

Plaintiff asserts that antiviral Interferon/Ribavirin treatment is the only known therapy for HCV treatment. This treatment is more successful, according to plaintiff, when given at earlier stages of the infection. Plaintiff asserts that he has a 75-85 percent chance of killing the virus if given the therapy. The treatment is ineffective when the infection progresses too far, because the damaged liver is unable to rid the body of the medication's toxins.

Plaintiff had a genotype screening in October 2003 and a liver biopsy in January 2004. Dr. Hutchinson denied antiviral therapy because plaintiff suffers only with a mild chronic inflammation, grade 1, stage 1. Dr. Hutchinson scheduled the next liver biopsy in five years to take place in January 2009. Plaintiff asserts that if he was not imprisoned, the treatment would be available to him.

Plaintiff has filed a request for a temporary restraining order and preliminary injunction requesting that the court order defendants to provide plaintiff with Interferon/Ribavirin treatment.

The issuance of preliminary injunctive relief is committed to the discretion of the district court. *Planned Parenthood Association v. City of Cincinnati*, 822 F.2d 1390, 1393 (6th Cir. 1987). In exercising that discretion, the court must consider and balance four factors:

    1. Whether the movant has shown a strong or substantial likelihood or probability of success on the merits.

    2. Whether the movant has shown irreparable injury.

    3. Whether the preliminary injunction could harm third parties.

>    4.   Whether the public interest would be served by issuing a preliminary injunction.

*Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994).  These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be carefully balanced by the district court in exercising its equitable powers.  *Id.*

Moreover, where a prison inmate seeks an order enjoining state prison officials, this Court is required to proceed with the utmost care and must recognize the unique nature of the prison setting.  *See Kendrick v. Bland*, 740 F.2d 432 at 438, n.3, (6th Cir. 1984).  *See also Harris v. Wilters*, 596 F.2d 678 (5th Cir. 1979).  It has also been remarked that a party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances.  *See Checker Motors Corp. v. Chrysler Corp.*, 405 F.2d 319 (2d Cir. 1969), *cert. denied*, 394 U.S. 999 (1969).  *See also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his Section 1983 action.  *NAACP v. City of Mansfield, Ohio*, 866 F.2d 162, 167 (6th Cir. 1989).  Plaintiff's complaint alleges that defendants have violated plaintiff's Eighth Amendment rights.  The Supreme Court has held that deliberate indifference to a prisoner's serious illness or injury states a violation of the Eighth Amendment's "cruel and unusual punishments" clause because it constitutes the "unnecessary and wanton infliction of pain."  *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976).  However, not every claim by an inmate of inadequate medical treatment rises to the level of an Eighth Amendment violation.

The standard by which such claims are judged involves two elements: the plaintiff's medical need must be "serious," and the plaintiff must show that the defendants were "deliberately indifferent" to that need. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1 (1992); *see also Wilson v. Seiter*, 501 U.S. 294 (1991).

"Deliberate indifference" requires an intentional effort to deny or ignore Plaintiff's need for medical care. *Estelle*, 429 U.S. at 105; *see also*, *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Harding v. Kuhlmann*, 588 F. Supp. 1315 (S.D. N.Y. 1984), *aff'd*, 762 F.2d 990 (2d Cir. 1985). Thus injury resulting from mere negligent conduct is insufficient to state an Eighth Amendment claim under Section 1983. *Estelle* 429 U.S. at 105; *see also Daniels v. Williams*, 474 U.S. 327, 333 (1986). Rather, the official's conduct "must demonstrate deliberateness tantamount to an intent to punish." *Hicks v. Frey*, 992 F.2d 1450 (6th Cir. 1993).

Complaints that the doctor did not prescribe a specific medication or should have ordered specific tests or negligently failed to provide adequate medical care may state a claim for malpractice under state law but do not state a claim that an inmate's federal rights have been violated. *See Williams v. Duckworth*, 598 F. Supp. 9, 13-15 (N.D. Ind. 1983), *aff'd without opinion*, 749 F.2d 34 (7th Cir. 1984). In *Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976), cited in *Estelle*, the Sixth Circuit remarked:

> Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.

*Id.* at 860, n. 5.

> In addition, the Sixth Circuit recently observed:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. at 105-06).

Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-155 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. April 4, 1997).

The Sixth Circuit has held that failure to check a prisoner's medical history before treating him does not necessarily rise to the level of "deliberate indifference" for purposes of an Eighth Amendment violation. *Sanderfer*, 62 F.3d at 154-155.

> The Supreme Court recently clarified the definition of deliberate indifference in the Eighth Amendment context by equating it with criminal recklessness, which requires a subjective showing that the defendant was aware of the risk of harm. *Farmer v. Brennan*, 114 S. Ct. 1970, 1979 (1994). Deliberate indifference, the Court held, requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*; *Brooks v. Celeste*, 39 F.3d 125, 128-29 (6th Cir. 1994). The *Farmer* Court added that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if harm ultimately was not averted. *Farmer*, 114 S. Ct. at 1982-83.

*Sanderfer*, 62 F.3d at 154-155. As the court in *Estelle v. Gamble* explained, medical malpractice does not become a constitutional violation merely because the victim is a prisoner. *Id*. at 106.

Plaintiff argues that defendants' failure to provide plaintiff with the only available treatment for HCV, which is most effective given at earlier stages of the virus, is clearly an act of deliberate indifference because there exists no reason to wait and provide the treatment at a later time. The only rationale for waiting is as a cost saving measure for the MDOC. If the MDOC delays plaintiff's treatment until plaintiff is released from prison, the MDOC will not be financially responsible for the costs of treatment that plaintiff would have to receive outside the prison. On the other hand, the MDOC argues that the treatment is not currently necessary because plaintiff's condition is at such an early stage, it is likely he will never experience complications arising from HCV. The MDOC continues to monitor plaintiff's condition and is following protocol developed for plaintiff's condition.

Plaintiff has presented the affidavit of Hari Conjeevaram, M.D., M.S., who is an assistant professor of Medicine, Section of Gastroenterology at the University of Michigan Medical Center. Dr. Conjeevaram explains that there exists a window of time when an HCV infected patient will most likely have a successful response to antiviral treatment. Once significant scarring or fibrosis of the liver develops, the chance of success lessens, and may be contraindicated if the patient develops a decompensated liver disease due to cirrhosis. Dr. Conjeevaram states that plaintiff is ready to begin antiviral treatment, and has a high chance of eliminating the disease from his body. Further, Dr. Conjeevaram explains that there are no clinically significant events that can occur that could make plaintiff a better candidate for the treatment in the future. However, progression of the disease could make it less likely that plaintiff would see success from the treatment if the treatment is delayed.

Defendants argue that treating plaintiff's condition with antiviral medication does not constitute a serious medical need because plaintiff remains at a stage 1, grade 1 status. Defendants take a very narrow view of what constitutes a serious medical need. In the opinion undersigned, the court should determine whether plaintiff's HCV in general constitutes a condition that presents a serious medical need. Undoubtedly, a patient with HCV, in general, presents a condition with a serious medical need. An HCV patient requires ongoing medical examinations and monitoring and determinations made regarding treatment. Even defendants recognize this as fact, because plaintiff continues to receive medical care and monitoring for his condition. The most appropriate question presented in this case is whether defendants have acted with deliberate indifference by not immediately placing plaintiff on antiviral medication.

Dr. Hutchinson recommended that for plaintiff: antiviral medication should be deferred, follow-up by the HCV Chronic Care Clinic, and a biopsy to take place in 5 years. Dr. William Cassidy, an Associate professor of Medicine at Louisiana State University Health Sciences Center, presented an affidavit as defendants' expert. Dr. Cassidy states that defendants have acted within the applicable standard of care for treatment of HCV, under plaintiff's circumstances. This course of treatment is consistent with the National Institute of Health Statement and the American Association for the Study of Liver Disease position paper on Management of Hepatitis C. Dr. Cassidy believes that treatment of plaintiff's HCV with antiviral medication is not indicated because there exists no immediate threat of harm, death, or pain and suffering to plaintiff. Indeed, Dr. Cassidy explains that forty percent of patients infected with HCV never experience any problems from the infection. Dr. Cassidy states that plaintiff is unlikely to have any problems associated with the infection over the next 18 to 36 years. The MDOC considers antiviral therapy for patients with a combination of grade 3 or 4 liver inflammation and moderate fibrosis. Plaintiff has not reached

those stages. Defendants feel that the appropriate standard of medical care, under plaintiff's circumstances, is to monitor his condition and re-biopsy plaintiff's liver in five years to see if there has been any progression. Plaintiff will remain treatable with antiviral medication for many years and a new future treatment may provide a better alternative. Defendants suggest that these guidelines are consistent with the procedures currently in use by the Federal Bureau of Prisons. In *Clark v. Hedrick*, 233 F.3d 1093 (8th Cir. 2000), the plaintiff, a federal prisoner, wanted a bone marrow transplant because he had leukemia. A bone marrow transplant was the appropriate course of treatment. Instead, the Bureau of Prisons harvested plaintiff's own bone marrow cells and froze those cells for future use if plaintiff's condition became more acute. Plaintiff was concerned that he was not receiving appropriate treatment because of the cost and his release date from prison was only 23 months away. The court held that defendants provided appropriate treatment, by monitoring plaintiff's condition and refusing to provide the transplant until plaintiff's condition became acute. The court noted that no one could determine when plaintiff's condition would become more acute and the possibility could also arise that plaintiff's heart condition could make him unable to have a transplant in the future.

Moreover, Dr. Cassidy opines that plaintiff is at a higher risk for side effects from antiviral therapy which are more common in older patients. The therapy causes increased anxiety and irritability, and it is not uncommon for patients to become extremely angry. Plaintiff's history of violent assault makes him more likely to have Interferon associated anger. Plaintiff also has a history of being a heavy smoker. On February 22, 2001, a chest x-ray showed no active pulmonary disease, but one year later, a chest x-ray, showed chronic obstructive pulmonary disease. Chronic obstructive pulmonary disease complicates Interferon/Ribavirin therapy, and worsens the side effects

of the therapy. Plaintiff also has a family history of heart disease. Plaintiff's entire medical condition and risks must be taken into account when deciding how he should be treated for HCV. Plaintiff has not established that defendants acted with deliberate indifference in providing his current course of HCV treatment. Under these circumstances, in the opinion of the undersigned, plaintiff has not shown a substantial likelihood of success on the merits of his claim.

Furthermore, plaintiff has failed to establish that he will suffer irreparable harm absent injunctive relief. The evidence presented to the court shows that plaintiff will remain treatable with antiviral therapy for a very long time period. If plaintiff proves successful in his claims, the antiviral therapy will be available and just as effective at a future date. Moreover, the MDOC has continued to monitor plaintiff's condition and has conceded that antiviral therapy may be available to plaintiff if his condition worsens at a future date.

Finally, in the context of a motion impacting on matters of prison administration, the interests of identifiable third parties and the public at large weigh against the granting of an injunction. Any interference by the federal courts in the administration of state prison matters is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover v. Johnson*, 855 F.2d 277, 286-87 (6th Cir. 1988). That showing has not been made here.

Because plaintiff has failed to meet the heavy burden establishing the need for injunctive relief, I recommend that plaintiff's motion for a temporary restraining order (Docket # 2) be denied.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten days of your receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich.

LCivR. 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal of those issues or claims addressed or resolved as a result of the Report and Recommendation. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley  
TIMOTHY P. GREELEY  
UNITED STATES MAGISTRATE JUDGE

Dated:   September 29, 2005